**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HERMAN MILLER INC.,

      Plaintiff,

    v.

ALPHAVILLE DESIGN INC., ALL
WORLD FURNITURE, INC., and
YONGFENG FURNITURE CO., LTD.,

      Defendants.
                         /

AND COUNTERCLAIM OF
ALPHAVILLE DESIGN, INC.
                         /

No. C 08-03437 WHA

**ORDER GRANTING
PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT AND
PERMANENT INJUNCTION
AGAINST DEFENDANT
YONGFENG FURNITURE
CO., LTD.**

**INTRODUCTION**

In this trademark infringement action, plaintiff Herman Miller, Inc., moves for default

judgment, permanent injunction, statutory damages, and attorney's fees and costs. For the

following reasons, the motion is **GRANTED**.

**STATEMENT**

The following facts are alleged by plaintiff. Plaintiff is a manufacturer of office and

home furniture. Plaintiff has used the names "Eames," "Charles Eames," and "Ray Eames" in

connection with its furniture since 1951 due to a long-time working relationship between plaintiff

and designers Charles and Ray Eames. On January 26, 1982, the United States Patent and

Trademark Office issued plaintiff Registration No. 1,187,673 for the EAMES® trademark.

United States District Court
For the Northern District of California

1    In 1956, Charles and Ray Eames designed the EAMES® Lounge Chair and Ottoman.

2    Plaintiff now also owns Trademark Registration No. 2,716,843, which provides plaintiff with the

3    exclusive right to use the EAMES® Lounge Chair and Ottoman design in connection with its

4    furniture.  Since the chair was developed in 1956, plaintiff has advertised and sold over 100,000

5    EAMES® Lounge Chairs and Ottomans under the Herman Miller name.  Plaintiff claims that the

6    design of this chair is unique and distinctive.  After many years of advertising and selling

7    furniture in connection with these trademarks, plaintiff has developed a reputation for

8    manufacturing and marketing EAMES® contemporary furniture products.

9    Defendant Yongfeng Furniture Co. Ltd. is located in China, but manufactures and exports

10   furniture to co-defendant Alphaville Design, Inc., a Delaware corporation with its principle place

11   of business in California.  Plaintiff alleges that Yongfeng manufactures counterfeit EAMES®

12   Lounge Chairs and Ottomans in China and transports these chairs to retailers for sale in the

13   United States.  These counterfeit chairs are "identical with, or substantially indistinguishable

14   from" plaintiff's registered EAMES® Lounge Chair and Ottoman.  Yongfeng also advertises

15   these counterfeit chairs as the "Charles Eames Chair and Ottoman Set."

16   Plaintiff filed a complaint on July 16, 2008 (Dkt. No. 1).  At that time, plaintiff did not

17   know the identity of defendant Yongfeng Furniture Co. Ltd. and instead named this defendant as

18   "Unknown China Company."  During the initial pre-trial conference on October 30, 2008, this

19   Court ordered co-defendant Alphaville to disclose the name of the Unknown China Company to

20   plaintiff to allow plaintiff to properly amend the complaint (Dkt. No. 46 at 6–9).  On that same

21   day, Alphaville filed a supplemental initial disclosure identifying Yongfeng Furniture Co., Ltd.,

22   as the Unknown China Company (Dkt. No. 74 Exh. 19).

23   Plaintiff filed the first amended complaint on January 23, 2009 (Dkt. No. 65).  It alleges

24   claims against defendant Yongfeng Furniture Co., Ltd. for:

25        1.     Trade dress infringement and unfair competition regarding the

26   EAMES® Lounge Chair and Ottoman under 15 U.S.C. 1114(1) and 1125(a),

27   California Business and Professions Code 17200 *et seq*., and California common

28   law; and

2

**United States District Court**

For the Northern District of California

1      2.      Trademark infringement and unfair competition regarding the

2   EAMES® trademark under 15 U.S.C. 1114(1) and 1125(a), California Business

3   and Professions Code 17200 *et seq*., and California common law.

4      In early 2009, plaintiff sent the summons (Dkt. No. 66) and first amended complaint, with

5   appropriate translations thereof, and a request for service abroad of judicial or extrajudicial

6   documents (Dkt. No. 69) to the Chinese Central Authority for service upon defendant Yongfeng.

7   On April 14, 2009, the Chinese Central Authority personally served the above-mentioned

8   documents upon Yongfeng at the contact address listed on Yongfeng's website (*see* Dkt. Nos. 66,

9   74).  A certificate, completed and signed by the Chinese Central Authority attesting that

10  Yongfeng was served in conformity with the Hague Convention, and an attached proof of service

11  were filed (Dkt. No. 69).

12     Yongfeng did not respond.  Plaintiff applied for entry of default against Yongfeng on

13  June 12, 2009 (Dkt. No. 70).  The clerk entered default on June 29, 2009 (Dkt. No. 72).

14  Plaintiff filed the present motion for entry of default judgment and permanent injunction against

15  Yongfeng on September 11, 2009 (Dkt. No. 73).  An order dated September 24, 2009, requested

16  that plaintiff submit materials to show that the Court has personal jurisdiction over Yongfeng

17  and that Yongfeng was properly served in accordance with the Hague Convention, federal law,

18  and/or state law (Dkt. No. 76).  On October 1, 2009, plaintiff filed the requested submissions

19  (Dkt. Nos. 77–78).

20                          **ANALYSIS**

21  **1.      PERSONAL JURISDICTION.**

22     In order to grant default judgment, this Court must have personal jurisdiction over the

23  defendant.  Defendant Yongfeng is a foreign corporation residing in China — a non-resident of

24  the forum state.  In the Ninth Circuit:

25          Personal jurisdiction over a nonresident defendant is tested by a
            two-part analysis.  First, the exercise of jurisdiction must satisfy
26          the requirements of the applicable state long-arm statute.
            Second, the exercise of jurisdiction must comport with federal due
27          process.  Because California's long-arm statute is coextensive with
            the limits of due process, the court need only consider the
28          requirements of due process.

                          3

1 *Bauman v. DaimlerChrysler Corp.*, No. 07-15386, 2009 U.S. App. LEXIS 19360, at \*8–9

2 (9th Cir. Aug. 28, 2009) (internal quotation marks and citations omitted).

3      Personal jurisdiction may be either general or specific to the allegations in the complaint.

4 *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004).

5 Plaintiff claims that this Court has specific jurisdiction over Yongfeng (*see* Dkt. No. 77).

6 The Ninth Circuit applies a three-element test for analyzing claims of specific jurisdiction:

7          (1)      The non-resident defendant must purposefully direct his
          activities or consummate some transaction with the forum or
8          resident thereof; or perform some act by which he purposefully
          avails himself of the privilege of conducting activities in the
9          forum, thereby invoking the benefits and protections of its laws;

10         (2)      The claim must be one which arises out of or relates to the
          defendant's forum-related activities; and

11

12         (3)      The exercise of jurisdiction must comport with fair play
          and substantial justice, *i.e.*, it must be reasonable.

13 *Id.* at 802.

14                **A.      Purposeful Direction and Availment.**

15      The first element "includes both purposeful availment and purposeful direction.  It may be

16 satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful

17 direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue*

18 *Contre Le Racisme Et. L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  "Evidence of

19 availment is typically action taking place in the forum that invokes the benefits and protections

20 of the laws in the forum.  Evidence of direction generally consists of action taking place outside

21 the forum that is directed at the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155

22 (9th Cir. 2006).

23      Here, plaintiff argues that defendant Yongfeng *purposefully directed* activities at the

24 forum by distributing counterfeit furniture to a company in California to facilitate the sale of such

25 furniture in California.  *See id.* at 1155–56 ("[E]vidence of purposeful direction includes activities

26 such as distribution and advertising").  In purposeful direction cases, courts normally employ the

27 "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984).  The Ninth Circuit construes *Calder* as

28 imposing three requirements:  "The defendant allegedly [must] have (1) committed an intentional

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

1  act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to

2  be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1207.

3       The following facts support the contention that Yongfeng committed an intentional act

4  that was expressly aimed at the forum state, thereby fulfilling prongs one and two of the "effects

5  test." *First*, Yongfeng delivered counterfeit chairs under the EAMES® name to a company in

6  California. *Second*, Yongfeng intended for the resale of the counterfeit chairs in California.

7  *Third*, Yongfeng's website states that it manufactures exclusively for export, with North America

8  being a main export market.

9       The third prong of the "effects test" — causing harm that defendant knows is likely to be

10  suffered in the forum state — is also met as to Yongfeng because plaintiff's alleged harms of

11  suffering a loss of goodwill and lost profits occurred in California due to sales of the counterfeit

12  furniture in California, as defendant presumably knew they would be.  Accordingly, all prongs

13  of the "effects test" are satisfied.

14                      **B.       Connection to Forum-Related Activities.**

15       As to the second element of the specific jurisdiction test, plaintiff must show that its

16  claims arise out of or relate to defendant Yongfeng's forum-related activities.  In making this

17  determination, the Ninth Circuit inquires whether plaintiff would have been injured *but for*

18  defendant's conduct directed toward the forum state.  *Ballard v. Savage*, 65 F.3d 1495, 1500

19  (9th Cir. 1995); *Thomas Weisel Partners LLC v. BNP Paribas, et al.*, No. C 07-6198 MHP, 2008

20  U.S. Dist. LEXIS 65936, at *20 (N.D. Cal. Aug. 26, 2008) (Patel, J.).

21       There is no doubt that plaintiff's claims arise from Yongfeng's forum-related activities.

22  Indeed, plaintiff's claim stems from Yongfeng's distribution of counterfeit furniture to a

23  California-based company for sale in California.  Additionally, *but for* Yongfeng's conduct in

24  infringing plaintiff's trademarks, the alleged harm to plaintiff would not have occurred.  In sum,

25  this element is satisfied.

26                      **C.       Reasonableness.**

27       Because plaintiff has satisfied its burden under the first two elements of the specific

28  jurisdiction test, the burden now shifts to defendants to "'present a compelling case' that the

5

United States District Court

For the Northern District of California

1  exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting

2  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).  Here, Yongfeng has failed to

3  plead or otherwise defend; consequently, no compelling reasons have been presented as to why

4  the exercise of jurisdiction over Yongfeng would be unreasonable.  Presumably, had Yongfeng

5  filed a responsive pleading or otherwise appeared in this case, Yongfeng might have emphasized

6  a lack of geographic connection to the United States.  Regardless, any such concerns would be

7  insufficient to render jurisdiction unreasonable.  If the reasonableness inquiry were dictated by

8  the extent of a defendant's geographic ties to the forum alone, the purposeful availment and

9  purposeful direction inquiries would be meaningless.

10  Although the burden on the defendant is a relevant factor, the other fairness and

11  reasonableness factors weigh in favor of finding that such an exercise of jurisdiction is

12  reasonable, including the forum state's interest in adjudicating the dispute, plaintiff's interest in

13  obtaining convenient and effective relief, judicial efficiency, and the shared interest of states "in

14  furthering fundamental substantive social policies."  *Burger King Corp.*, 471 U.S. at 476–77.

15  Plaintiff certainly has a strong interest in obtaining effective and efficient relief.  Likewise, the

16  forum state has an interest in adjudicating this dispute as the parties are conducting business in

17  the forum and a decision now will prevent future suits over similar conduct thereby serving

18  judicial efficiency.  Finally, preventing the continued infringement of trademarks is certainly a

19  substantive policy.

20  In sum, the three-element test for analyzing claims of specific jurisdiction is satisfied.

21  Accordingly, personal jurisdiction over defendant Yongfeng is proper.

22  **2.    SERVICE OF PROCESS.**

23  Federal Rule of Civil Procedure 4 governs service of process in federal court.  Rule

24  4(h)(2) authorizes service on a foreign corporation outside of the United States "in any manner

25  prescribed for individuals by subdivision [4](f) except personal delivery as provided in paragraph

26  (2)(C)(i) thereof," unless a waiver of service has been obtained and filed.  In the present case, no

27  waiver of service was obtained.  Rule 4(f) authorizes, *inter alia*, service by the methods

28  prescribed in the Hague Convention on the Service Abroad of Judicial and Extrajudicial

1  Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163

2  (hereinafter the Hague Convention).

3       The Hague Convention governs service on persons in foreign countries that are parties to

4  the Convention.  Indeed, "[c]ompliance with the Convention is mandatory in all cases to which it

5  applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).  Both China

6  and the United States are parties to the Hague Convention.  *See The Hague Conference on Private*

7  *International Law website*, "Status Table of the Service Convention," 1951–2009, *available at*

8  *www.hcch.net* (last visited Oct. 8, 2009).  Under the Hague Convention:

9           Requests for service must conform to a model form attached to the
             Hague Convention. *The Hague Convention*, art. 3, . . .  The form,
10          as well as all relevant documents, should be sent "by the judicial
             officer of authority in the state in which the documents originate
11          to the designated central authority of the country in which the
             recipient is located." *Cipolla v. Picard Porsche Audi, Inc.*,
12          496 A.2d 130, 131–132 (R.I. 1985); *see The Hague Convention*,
             art. 4 . . .  "Once a central authority receives a request in the proper
13          form, it must serve the documents by a method prescribed by the
             internal law of the receiving state or by a method designated by the
14          requester and compatible with that law.  The central authority must
             then provide a certificate of service that conforms to a specific
15          model." *Schlunk*, 486 U.S. at 698; *see The Hague Convention* arts.
             5–6 . . .  [T]he Hague Convention ensures that proper service upon
16          foreign defendants will be effected in accordance with Rule
             4(h)(2).

17  *Nuance Communications, Inc. v. Abbyy Software House*, No. C 08-02912 JSW, 2009 U.S. Dist.

18  LEXIS 75583, at *10–11 (N.D. Cal. Aug. 25, 2009) (White, J.).

19       As explained in plaintiff's submissions in response to the order concerning personal

20  jurisdiction and service (Dkt. Nos. 77–78), plaintiff has complied with these requirements.

21  Plaintiff's request form for service, as well as all relevant documents, were sent to the Chinese

22  Central Authority for personal service upon Yongfeng.  Upon receipt of these documents, the

23  Central Authority then served Yongfeng and returned the certificate of service to plaintiff,

24  pursuant to the Hague Convention.  Indeed, the "Central Authority's return of a completed

25  certificate of service is prima facie evidence that the Authority's service . . . was made in

26  compliance with [the foreign nation's] law." *Northrup King Co. v. Compania Productora*

27  *Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995); *see also Brockmeyer v.*

28  *Marquis Publications, Ltd.*, 383 F.43d 798, 804 (9th Cir. 2004) ("The Hague Convention

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

1   affirmatively authorizes service of process through the Central Authority of a receiving state").

2   Defendant Yongfeng was, therefore, properly served with the first amended complaint in

3   accordance with the requirements of due process.

4       **3.   DEFAULT JUDGMENT.**

5       Under FRCP 55(b)(2), a party can apply to the court for entry of judgment by default.

6   "The district court's decision whether to enter a default judgment is a discretionary one."

7   *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether default judgment

8   is appropriate, the following factors are considered:

9               (1) [T]he possibility of prejudice to plaintiff, (2) the merits of
                plaintiff's substantive claim, (3) the sufficiency of the complaint,
10              (4) the sum of money at stake in the action, (5) the possibility of a
                dispute concerning the material facts, (6) whether the default was
11              due to excusable neglect, and (7) the strong policy underlying the
                Federal Rules of Civil Procedure favoring decisions on the merits.

12  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  For the following reasons, these

13  factors favor entry of default judgment against defendant Yongfeng.

14              **A.   Merits of Substantive Claims and
                Sufficiency of the Complaint.**

15

16      After the entry of default, all well-pleaded factual allegations in the complaint are taken as

17  true, except as to the amount of damages.  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906

18  (9th Cir. 2002).  The merits of plaintiff's substantive claims and the sufficiency of the complaint

19  are thus considered together.

20      At the outset, this order notes that plaintiff's certificates of trademark registration

21  regarding the EAMES® name and the EAMES® Lounge Chair and Ottoman are "prima facie

22  evidence of the validity of the mark[s] and . . . shifts the burden of proof to the contesting party,

23  who must introduce sufficient evidence to rebut the presumption of the holder's right to protected

24  use." *Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297, 1301 (9th Cir. 1994), *overruled*

25  *on other grounds by Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159 (1995).

26      Plaintiff claims that defendant Yongfeng is liable for trademark infringement, trade dress

27  infringement, and unfair competition based on Yongfeng's use of the EAMES® trademark and

28  counterfeit manufacture and distribution of the EAMES® Lounge Chair and Ottoman in violation

8

United States District Court

For the Northern District of California

of 15 U.S.C. 1114(1) and 1125(a), California Business and Professions Code 17200 *et seq.*, and

California common law.  Because plaintiff holds registered trademarks on both the EAMES®

name and the EAMES® Lounge Chair and Ottoman, the elements that plaintiff must meet to state

a claim are the same as to *all* of plaintiff's federal and state law claims.[1]  These elements are as

follows:  (1) defendant must have used the protected trademark "in commerce," and (2) that use

must be likely to confuse or misrepresent to consumers the characteristics of goods or services.

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*, 185 F.3d 848, 853–54

(9th Cir. 2002).

Under 15 U.S.C. 1127, "a mark is 'used in commerce' when (1) the mark has been placed

on the goods or their containers, labels or the documents associated with the goods or their sale,

and (2) the goods are sold or transported in commerce." *Karl Storz Endoscopy-America*, 185 F.3d

at 855 (internal quotation marks omitted).  Plaintiff's complaint sufficiently states that defendant

used the EAMES® name and counterfeit EAMES® furniture "in commerce" because the

EAMES® name was placed on furniture that was near identical to the design of the EAMES®

Lounge Chair and Ottoman, and such counterfeit furniture was then advertised, sold, and

transported in commerce by defendant.  Thus, this element is satisfied.

The second element is "[t]he core element . . . , *i.e.*, whether the similarity of the marks is

likely to confuse customers about the source of the products."  *The Freecycle Network, Inc. v.

Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (internal quotation marks and citations omitted).

The Ninth Circuit considers the following eight factors as relevant to determining whether there

is a likelihood of confusion:

> (1) [S]trength of the mark; (2) proximity of the goods;
> (3) similarity of the marks; (4) evidence of actual confusion;
> (5) marketing channels used; (6) type of goods and the degree of
> care likely to be exercised by the purchaser; (7) defendant's intent

---

[1] *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 631–32 (9th Cir. 2007) (federal claims under
15 U.S.C. 1114(1) and 1125(a) and state law claims for unfair competition under California Business and
Professions Code 17200 and California common law are all subject to the same test); *E.S.S. Entertainment
2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 n.1 (9th Cir. 2008) (trade dress infringement and
trademark infringement claims under Section 1125(a) follow the same analysis); *Two Pesos, Inc. v. Taco
Cabana, Inc.*, 505 U.S. 763, 768 (1992) (Section 1125(a) prohibits a broader range of practices than
Section 1114(1), which requires a registered trademark, and thereby encompasses Section 1114(1) claims).

<strong>United States District Court</strong><br>For the Northern District of California

in selecting the mark; and (8) likelihood of expansion of the product lines.

*Id.* at 903 n.5.  Although not all elements must be satisfied, the complaint states sufficient facts to fulfill each element.

*First*, the mark is strong due to plaintiff's use of the EAMES® name in connection with its furniture since at least 1951 and "industry-wide reputation" associated with the mark (First Amd. Compl. 4).  *Second*, Yongfeng's counterfeit furniture is in close-proximity to plaintiff's because it is exported for sale in the United States (*id.* at 5).  *Third*, the marks are substantially similar because "Yongfeng's knockoff furniture is identical with, or substantially indistinguishable from" plaintiff's design (*id.* at 6).  *Fourth*, "evidence that the defendant intentionally copied the plaintiff's mark" is "persuasive proof that future confusion is likely" because "a defendant is presumed able to accomplish this purpose." *Kendall-Jackson Winery*, 150 F.3d at 1048.  That the counterfeit furniture is identical to, or substantially indistinguishable from, the Herman Miller furniture and labeled with the EAMES® name is sufficient to show that Yongfeng intentionally copied plaintiff's marks — actual confusion is therefore presumed. *Fifth*, there is similarity in marketing channels because of the close proximity of the goods and Yongfeng's advertising to United States customers (*id.* at 5–6).  *Sixth*, consumers are not likely to be particularly diligent in researching the actual manufacturer of the chair prior to purchasing given the familiarity of the EAMES® name in the United States.  *Seventh*, the substantial similarity between the products demonstrates that Yongfeng's intent in selecting the EAMES® mark was most likely for reasons of profit at the expense of plaintiff.  *Eighth*, given that Yongfeng was bold enough to use the EAMES® name on substantially identical furniture, there is no reason why Yongfeng would not attempt to expand the product line of counterfeit EAMES® furniture in the future.

In sum, all factors militate in favor of a *strong* likelihood of consumer confusion, and the complaint sufficiently states claims for trademark infringement, trade dress infringement, and unfair competition under 15 U.S.C. 1114(1) and 1125(a), California Business and Professions Code 17200 *et seq.*, and California common law against defendant Yongfeng.

10

**B.      Remainder of the *Eitel* Factors.**

The remainder of the *Eitel* factors favor entering default judgment in favor of plaintiff. If this motion is not granted, plaintiff will be left without a remedy or a means to prevent Yongfeng's continued infringement.  Yongfeng never answered or otherwise responded to the complaint, so it is unclear whether there would be any dispute over material facts.  Trademark and trade dress infringement are both strict liability claims, thereby limiting the scope of factual disputes.  In general, the fact that a large sum of money is at stake disfavors default judgment. *See Eitel*, 782 F.2d at 1472 (stating that a three million dollar judgment at stake, considered in light of the parties' dispute as to material facts, supported the court's decision not to enter default judgment).  Here, plaintiff asks for an even larger sum of money — more than four million dollars — in addition to a permanent injunction.  As described below, however, the damages are statutory and the amount is left to the Court's discretion.  There is no evidence that Yongfeng's failure to respond was the result of excusable neglect.  Although federal policy does favor a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where the defendant has refused to litigate.  On balance, the *Eitel* factors weigh in favor of granting default judgment.

**C.      Determination of Relief.**

Allegations of damages are not deemed true simply because of the defendant's default. Some proof of the amount is required.  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Plaintiff seeks a permanent injunction, statutory damages, and attorney's fees and costs.

*(1)      Permanent Injunction.*

Injunctive relief is available to prevent future trademark infringement under the Lanham Act. *See* 15 U.S.C. §§ 1116(c), 1125(a).  Indeed,"[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  Plaintiff has demonstrated that defendant Yongfeng's infringement has caused irreparable injury by hurting the goodwill of Herman Miller's iconic

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1     furniture piece and the EAMES® name.  Moreover, Yongfeng's refusal to answer or appear in

2     this action makes it difficult for plaintiff to prevent further infringement.  An injunction would

3     serve to prevent Yongfeng from continuing to infringe plaintiff's trademarks and would resolve

4     the on-going public confusion regarding the EAMES® furniture.  In sum, the "traditional

5     equitable principles" established by *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839–40

6     (2006), are satisfied, and injunctive relief is warranted.  Plaintiff's motion for a permanent

7     injunction is **GRANTED**.  Defendant Yongfeng Furniture Co., Ltd., is hereby permanently

8     enjoined from:

9              1.      Exporting into the United States copies, reproductions, colorable

10     imitations, or counterfeits of the EAMES® Lounge Chair and Ottoman; and

11              2.      Using EAMES®, any colorable imitation thereof, or any other

12     mark likely to cause confusion with EAMES® in connection with the sale of

13     furniture for export into the United States.

14                        *(2)      Statutory Damages.*

15     For trademark actions involving the use of a counterfeit mark, a plaintiff may elect to

16     recover statutory damages at any time before final judgment is entered.  15 U.S.C. § 1117(c).

17     In its discretion, a court can award "not less than $1,000 or more than $200,000 per counterfeit

18     mark per type of goods or services sold, offered for sale, or distributed, as the court considers

19     just." *Ibid.*  A court may also grant enhanced damages of up to $2,000,000 per counterfeit mark

20     on a finding of willful infringement.  *Ibid.*  Willful infringement occurs when the defendant

21     knowingly and intentionally infringes on a trademark.  *See Earthquake Sound Corp. v. Bumper*

22     *Industries*, 352 F.3d 1210, 1216–17 (9th Cir. 2003).  Willfulness can also be inferred from a

23     defendant's failure to defend.  *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D.

24     494, 500 (C.D. Cal. 2003).

25     Plaintiff argues that defendant Yongfeng's infringement was willful for the following

26     reasons.  *First*, plaintiff notified Yongfeng that the furniture was both counterfeit and infringing

27     on trademarks, yet Yongfeng persisted in its illegal behavior.  *Second*, due to Yongfeng's failure

28     to appear, plaintiff has been unable to determine its precise damages because plaintiff does not

United States District Court

For the Northern District of California

1   know exactly how many counterfeit EAMES® Lounge Chair and Ottoman sets Yongfeng has

2   exported to the United States.  *Third*, Yongfeng's labeling of the furniture as the "Charles Eames

3   Chair" proves that Yongfeng intended to copy and create counterfeits of the EAMES® Lounge

4   Chair and Ottoman.  This order agrees that these factors support a finding of willful infringement

5   on the part of defendant Yongfeng.

6       Plaintiff asks for the maximum enhanced statutory damages for the infringement of each

7   of two trademarks.  At $2,000,000 per counterfeit trademark, the tab comes to $4,000,000.  It is

8   true that due to Yongfeng's failure to appear and respond to the lawsuit, plaintiff does not know

9   exactly how many counterfeit chairs have been sold — but that in itself simply does not support

10  levying a statutory damages award of $4,000,000.  *See Chanel, Inc. v. Doan*, No. C 05-03464

11  VRW, 2007 WL 781976, at *5 (N.D. Cal. Mar. 13, 2007) (Walker, J.) (granting the plaintiff's

12  request for statutory damages on default judgment where it bore a plausible relationship to the

13  defendant's profits from infringement).  Statutory damages are intended to serve as a deterrent,

14  but that does not justify such a windfall.  *See Peer International Corp. v. Pausa Records, Inc.*,

15  909 F.2d 1332, 1332 (9th Cir. 1990).

16      A court has wide discretion to determine the amount of statutory damages between the

17  statutory maxima and minima.  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.

18  1984).  In calculating statutory damages, some courts have looked to estimates of actual

19  damages.  *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999).

20  Here, plaintiff has presented no estimate of how much Yongfeng profited from its infringing

21  activity.  Plaintiff's statements that Yongfeng generates over five million dollars in yearly

22  revenue (as of 2005), currently has production capacity of over 5000 units per month, and

23  employs dozens of personnel do not demonstrate how much of this revenue, production capacity,

24  or personnel are a product of Yongfeng's sales of counterfeit EAMES® chairs.  No case cited by

25  plaintiff in response to this problem is binding.

26      Plaintiff's strongest argument for being awarded the maximum statutory damages is that

27  because Yongfeng is located in China plaintiff will have to expend considerable resources just to

28  collect on the money judgment.  For this proposition, plaintiff cites Arthur Yan, *Enforcing and*

13

United States District Court

For the Northern District of California

1  *Collecting Money Judgments in China from a U.S. Judgment Creditor's Perspective*, 36 GEO.

2  WASH. INT'L L. REV. 757, 758 (2004).  But this article does not state that enforcing a money

3  judgment in China is *expensive*, nor does it detail *how expensive* such a process may be.

4  Rather, the article simply explains that getting such judgments enforced in China has been

5  "notoriously difficult in recent years."  *Id.* at 758.  For example, the article lists one instance of

6  a company located in the United States having held a judgment against a Chinese paramilitary

7  unit in the amount of approximately $10,000 since 1996.  *Id.* at 758 n.4.  It is certainly not true

8  that the enforcement of a money judgment in China will cost $4,000,000.  Moreover, the fact that

9  the judgment may not ultimately be enforced by a Chinese court does not warrant awarding

10  plaintiff a windfall in statutory damages.

11  Accordingly, the Court concludes it is just to award statutory damages in the amount of

12  $250,000 per trademark infringed, for a total of $500,000.  This is 250 times the minimum

13  allowed under the statute to reflect the finding of willfulness.  These damages, coupled with the

14  permanent injunction granted against defendant Yongfeng, will adequately serve the purpose of

15  deterrence and will help defray any additional costs associated with attempting to enforce the

16  judgment in China.

17  *(3)     Attorney's Fees and Costs.*

18  An award of reasonable attorney's fees and costs is allowed in "exceptional cases" of

19  trademark infringement.  *See* 15 U.S.C. § 1117(a).  "While the term 'exceptional' is not defined

20  in the statute, attorneys' fees are available in infringement cases where the acts of infringement

21  can be characterized as malicious, fraudulent, deliberate, or willful."  *Rio Properties, Inc. v. Rio*

22  *International Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).  This order has already determined

23  that defendant Yongfeng's infringement was "willful."

24  Plaintiff asks for $9,461.69 in attorney's fees and $3,965.60 in costs of the action, totaling

25  $13,427.29, which its counsel declares is substantially less than the amount of fees and costs

26  actually accrued in prosecuting this action against defendant Yongfeng (First. Amd. Compl. 21).

27  Defendant Yongfeng has failed to appear in this action, and the amount of attorney's fees and

28

14

costs asked for by plaintiff seems reasonable under the circumstances.  Accordingly, plaintiff will be granted its request of $13,427.29 in attorney's fees and costs.

<b>CONCLUSION</b>

For the above reasons, plaintiff's motion for default judgment and permanent injunction is **GRANTED**.  Defendant Yongfeng Furniture Co., Ltd., is hereby permanently enjoined from:

1.     Exporting into the United States copies, reproductions, colorable imitations, or counterfeits of the EAMES® Lounge Chair and Ottoman; and

2.     Using EAMES®, any colorable imitation thereof, or any other mark likely to cause confusion with EAMES® in connection with the sale of furniture for export into the United States.

Plaintiff has the responsibility to serve the injunction order in such a manner as to make it operative in contempt proceedings.  Plaintiff is awarded $500,000 in damages and $13,427.29 in attorney's fees and costs.

**IT IS SO ORDERED.**

Dated: October 22, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE